OPINION
Plaintiff-appellant, Robert W. Wright, appeals a decision of the Clermont County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Goshen Township, in an action for negligence and nuisance.
On June 1, 1993, appellant was in the Goshen Township cemetery to decorate the graves of several friends. After he paid his respects but before he left the cemetery, appellant decided to stop at the cemetery outhouse to use the toilet. The outhouse, which dates at least from the 1940s,[1] is a wooden structure, forty-nine inches wide by fifty-five inches long, with a wooden platform elevated approximately sixteen and one-half inches above the floor. The platform accommodates two toilet seats. The floor is constructed of wooden planks which are approximately one inch thick with tongue-and-groove joints. Beneath the floor is the pit which is approximately forty-three inches deep.
Upon opening the outhouse door, appellant noticed that the outhouse had been recently restocked with new air freshener and toilet paper and that it was clean. Appellant entered the outhouse and shut the door behind him. As he was standing in front of the first stall and raising the toilet seat, appellant "kind of felt a vibration of the building, and the floor went out from under [him] and [he] went through the floor."
As he was falling, appellant successfully used his elbows to catch himself and to keep from falling all the way into the pit. However, at the point where he caught himself, appellant's body from the chest down was below the level of the floor. Appellant thereafter managed to pull himself out and crawl out of the outhouse onto the cemetery lawn. Subsequently, an unidentified woman saw him and called for help. As a result of the fall, appellant suffered injuries to his legs, wrists, shoulder, lower back, and neck. Appellant had been in the outhouse for approximately one minute when the floor collapsed. The outhouse was subsequently locked and has been locked since June 1, 1993.
On May 31, 1995, appellant filed a complaint in the trial court alleging that he had been injured as a direct result of appellee's negligent maintenance of the premises, its breach of duty of care and duty to inspect, its failure to correct a dangerous defect, its failure to warn or notify, its maintenance of a nuisance, and its failure to use due care in the maintenance of the premises. On July 1, 1996, appellee filed a motion for summary judgment arguing that it was immune from liability under R.C. Chapter 2744. The trial court agreed with appellee and granted its motion for summary judgment on October 15, 1996.
Appellant timely filed this appeal. In his sole assignment of error, appellant argues that the trial court improperly granted appellee's motion for summary judgment. Appellant contends that the record shows that appellee had constructive notice not only of a nuisance on its public grounds, but also of "a defect * * * [which it] negligently failed to discover * * * upon maintenance inspections." Appellant also contends that appellee negligently breached its duty to maintain the outhouse "by failing to discover the construction and design defects in the flooring * * * despite constructive notice thereof."
Civ.R. 56(C) provides in part that summary judgment shall be rendered when there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made who is entitled to have the evidence construed most strongly in his favor. Additionally, a party who opposes a motion for summary judgment may not rest upon the allegations or denials in his pleadings but must affirmatively demonstrate the existence of genuine issues of material fact to prevent the granting of a motion for summary judgment. Civ.R. 56(E); Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115.
It is well-established that an appellate court must independently review the record to determine if summary judgment was appropriate. Thus, an appellate court affords no deference to the trial court's decision while making its own judgment. Schwartz v. Bank One, Portsmouth, N.A. (1992), 84 Ohio App.3d 806,809.
We note at the outset that in its October 15, 1996 entry, the trial court refused to consider the affidavit appellant offered in opposition to appellee's motion for summary judgment. The trial court found that because appellant's affidavit contradicted, without explanation, appellant's earlier deposition testimony, and thus "constitute[d] a clear attempt to create a genuine issue of material fact while none previously existed, the court ha[d] no option but to disregard it."
In his deposition on December 21, 1995, appellant testified that when he was inside the outhouse prior to the time that the floor collapsed, he did not notice that the floorboards were defective in any way. Appellant testified that after he "went through [the floorboards he] noticed * * * they weren't the greatest * * * [because of] some rotten spots * * * on the boards around [him]."
Appellant's affidavit, dated July 30, 1996, states in relevant part:
 7. During this fall, I cut my leg and twisted my back and neck. Eventually, I struggled out of the outhouse where an unknown lady saw me and called for help. While I was in the outhouse, I noticed that the wood was rotted and that there were floorboards in the back of the outhouse that were broken. My fall did not disturb them.
 8. I was taken by ambulance to Bethesda North Hospital. Ultimately I had surgery on my back and neck and incurred over $30,000.00 in medical bills as a result of the accident.
 9. Before my fall, I was unable to ascertain the condition of the outhouse.
Pictures taken by Thomas R. Huston, Ph.D., appellant's industrial engineering expert, and attached to Huston's July 26, 1996 report, show that the broken floorboards referred to by appellant were part of the floor of the outhouse.[2]
After thoroughly reviewing both the deposition and the affidavit of appellant, we agree with the trial court that appellant's affidavit directly contradicts appellant's deposition testimony that he noticed no defects in the condition of the floor of the outhouse other than the rotten spots on the floorboards around him after his fall. It is well-established that when an affidavit contradicts the affiant's earlier deposition testimony, the affidavit should be given no weight by the trial court. Branam v. Batavia (Apr. 10, 1995), Clermont App. No. CA94-09-075, unreported. We therefore conclude that the trial court correctly disregarded appellant's affidavit.
In the case at bar, appellant's theories of liability against appellee are negligence and nuisance. It is well-established that "in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom. * * * The existence of a duty depends on the foreseeability of the injury." Menifee v. Ohio Welding Prod., Inc. (1984), 15 Ohio St.3d 75, 77.
"The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. * * * The foreseeability of harm usually depends on the defendant's knowledge." Id. There is no issue to submit to the jury until specific conduct involving an unreasonable risk is made manifest by the evidence presented. Id.
In addition, "where negligence revolves around the question of the existence of a hazard or defect, the legal principle prevails that notice, either actual or constructive, of such hazard or defect is a prerequisite to the duty of reasonable care." Heckert v. Patrick (1984), 15 Ohio St.3d 402, 405.
With regard to nuisance, it is well-established that before liability can be imposed on a political subdivision such as a township, "the political subdivision must have had `either actual or constructive knowledge of the nuisance.'" Franks v. Lopez (1994), 69 Ohio St.3d 345, 349. "There is constructive knowledge if `such nuisance existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger * * *.'" Id.
In his deposition, appellant testified that before the fall, he did not notice whether or not any of the floorboards were defective. Appellant did notice, however, that the outhouse had been cleaned and restocked with air freshener and toilet paper. Appellant testified that after the fall, he noticed some rotten spots on the floorboards around him. Appellant also testified that he had used the outhouse before and that he had no reason whatsoever to believe that the floor was unsafe. Appellant testified that although he had no basis to believe appellee knew the outhouse was defective, it was appellee's responsibility to make sure it was safe by inspecting it regularly. Appellant admitted, however, that he had no reason to believe appellee did not inspect the outhouse. Appellant also admitted that other than the fact that the floor collapsed, he had no facts on which to rely in alleging that appellee was negligent.
In his deposition, Bill E. Smith, appellee's road and cemetery supervisor for twenty-one years, testified that he did not know who designed the outhouse, and did not know the age of the outhouse or its floor. Smith stated, however, that the outhouse was there when he started working for appellee in 1974. Smith testified that maintenance performed on the outhouse involved painting it, including the floor; regularly cleaning it; replacing toilet paper as needed; and regularly putting lime into the pit. Smith testified that his three-member staff checked the outhouse "once a month or so," and that if they noticed any defects in the outhouse, they would report them to him. Smith testified that as a result of his employees' checks, the defective condition of the outhouse roof had been brought to his attention and a new tin roof was installed.
Smith also testified that when two of his employees went into the outhouse on May 27, 1993 to pour lime into the pit, he personally looked into the outhouse. Smith testified that he did not notice any defect or the broken boards referred to in Huston's report. Rather, "the floor was good and solid." Smith also testified that the floor "always seemed good and structured when [he] was in there" and that he had never received any complaints from the public about the outhouse. Finally, Smith testified that nothing had been touched in the outhouse since it had been locked on June 1, 1993 "except the groundhog hole." Apparently, a groundhog had tried to get in the outhouse.
Attached to appellee's motion for summary judgment were the affidavits of Smith and two of his employees, Carl Johnson and Lucien Clemons. Smith's affidavit states in relevant part:
 3. During * * * 20 years of employment, I have received no complaints from anyone regarding the structural integrity of the outhouse floor contained on the property of the Goshen Township Cemetery, prior to the allegations made by Mr. Robert Wright * * *. I was never aware of any structural problems with the outhouse floor prior to Mr. Wright's allegations.
 4. As part of my duties as Sexton of the Goshen Township Cemetery, either myself or one of the township employees under me, regularly cleans and inspects the township outhouse. This outhouse is used infrequently by visitors and is inspected about once every four to six weeks during a year. These inspections involve cleaning the outhouse, resupplying it and checking to make sure the outhouse is generally sound in condition.
 5. Additionally, myself and my employees spend a significant amount of time working in the cemetery containing the outhouse. As such, these employees and myself included, have found occasion on a more or less regular basis to make use of the outhouse for its intended purpose. Therefore, it is likely that I and my employees represent the individuals who most often use and visit the outhouse at issue.
* * *
 7. During any of those inspections or regular uses of the outhouse at issue, I have never become aware of any defect regarding the condition of the floor of the outhouse which would put me or the township upon notice that an incident as is alleged by Mr. Wright would be likely to occur.
 8. Furthermore, on May 27, 1993, Mr. Carl Johnson and Mr. Kenny Allen, both employees at the time of the Goshen Township Road and Cemetery Department, were, upon my instructions, simultaneously, inside the outhouse with a 100 pound bag of lime for the purpose of cleaning and pouring lime into the outhouse well, in preparation for the upcoming Memorial Day holiday. * * * Neither of these individuals reported to me any problem with the structure or stability or integrity of the outhouse floor.
Johnson's affidavit states that:
 1. My name is Carl Johnson. I am an employee of the Goshen Township Road Cemetery Department. I have been employed in that capacity since May of 1991.
 2. During my employment in the Goshen Township Road Cemetery Department, I had been instructed by Mr. Bill Smith on numerous occasions to clean and inspect the outhouse at the Goshen Township Cemetery.
 3. As my job duties require me to spend a significant amount of time in the Goshen Township Cemetery, I have on occasion used the Goshen Township outhouse for its intended purpose.
 4. During those inspections and uses of the Goshen Township Cemetery outhouse, I have never become aware of any problem with the structure of the outhouse floor and have never noticed anything that would make me believe that the outhouse floor was in any way defective or unsafe for use prior to the allegations raised by Mr. Wright * * *.
 5. In fact, on May 27, 1993, myself and Mr. Kenny Allen were given the duty by Mr. Smith of cleaning the outhouse and dumping lime in the outhouse pit in preparation for the upcoming Memorial Day holiday. While Mr. Allen and I were performing that duty, we simultaneously worked and stood in the outhouse holding a 100 pound bag of lime. Our combined weight equals over 400 pounds. Therefore, at that time, well over 500 pounds was [sic] standing on the outhouse floor. During that time in the outhouse, I noticed no problems with the structure of the outhouse floor and nothing that would indicate to me that the floor was otherwise unsafe.
Clemons' affidavit states that:
 1. My name is Lucien Clemons * * *. I am an employee for the Goshen Township Road and Cemetery Department. I have been employed by that department for the past 13 years.
 2. As part of my job duties in the Goshen Township Road and Cemetery Department, I have from time to time been given the duty by Mr. Bill Smith to clean and inspect the outhouse at the Goshen Township Cemetery.
 3. Furthermore, because my job necessitates working in the cemetery on a regular basis, I have used the outhouse for its intended purpose on numerous occasions.
 4. During those inspections and uses, I have never noticed any problem with the structural integrity of the outhouse floor and have never noticed anything that would make me believe that the outhouse floor was in any way defective or unsafe for use prior to the allegations raised by Mr. Wright * * *.
Attached to appellant's reply to appellee's motion for summary judgment was Huston's affidavit which states in relevant part:
 1. My name is Thomas R. Huston. I am an adjunct associate professor of engineering at the University of Cincinnati. * * * I am an expert in this area.
 2. I inspected the Goshen Township Cemetery Outhouse on May 28, 1996. Based upon my inspection I prepared the attached report which contains my findings and opinions concerning the outhouse. * * * The photographs of the outhouse attached to the report were taken by me and constitute a true and accurate representation of the outhouse on the date that I visited it.
 3. It is my opinion * * * that Goshen Township negligently designed and constructed the outhouse and that, as a direct and proximate result, Bob Wright fell through the wood floorboards at the front of the outhouse.
 4. It is further my opinion that Mr. Wright's accident was foreseeeable given the design and construction defects that existed in the outhouse flooring.
 5. Based upon affidavits that I have reviewed, I understand that the outhouse has been under lock and key since Bob Wright's fall on June 1, 1993 and that therefore the outhouse's condition including the flooring, has not been changed since the accident. I further understand that Bob Wright fell through flooring on the front area of the outhouse only. It can therefore be assumed that the defective floorboards in the back of the outhouse * * * had been in that condition since before Bob Wright's fall on June 1, 1993.
 6. Because of the defective floorboards in the back of the outhouse, it is therefore my opinion that the outhouse floor was not in good repair on the date of the accident. It is further my opinion that Goshen Township personnel should have discovered the defective back floorboards upon routine maintenance and inspection of the outhouse which placed upon them a duty to determine the cause of the defect. Upon such inspection, the township should have discovered the design and construction defects to which I previously averred.
 7. Because these defects were not discovered, it is further my opinion that the township negligently maintained and operated the outhouse, negligently kept the outhouse in disrepair and that as a direct and proximate result of this negligence, Bob Wright fell through the floorboards at the front of the outhouse.
Huston's report, dated July 26, 1996 and referred to in Huston's affidavit, provides in relevant part:
 The floor of the outhouse was constructed from wooden planks with tongue-and-groove joints. The wooden planks were 0.858 inches thick and had a nominal width of 3-3/8 inches. The wooden planks were arranged in a configuration where the long axis of the planks was perpendicular to the wooden platform. * * *
 It was noted that the outhouse did not feature any joists underneath the wooden planks of the floor. * * * Joists are a series of parallel beams that form a frame to support a floor. On this floor, the wooden planks were supported only at the ends. One end of the wooden planks abutted a wall of the outhouse. This end of the wooden planks rested upon a wooden sill that was 4-1/4 inches wide. Further, this end of the planks was secured into the sill with nails. * * * The other end of the wooden planks next to the wooden platform did not rest upon a sill. Instead, this end of the wooden planks was positioned beneath a beam and attached with nails. * * *
 At the time of the inspection, * * * [i]t was * * * noted that other planks of the floor had become detached at the end next to the wooden platform.
* * *
 There are safety concerns regarding the design of the floor of the outhouse. First, the end of the planks next to the wooden platform did not rest upon a beam or joist. * * * Hence, any load on the planks at this end must be supported by the friction between the nails and the planks. The nails then distribute the loading to the wooden beam above the planks. However, such a design has the potential for the end of the planks to loosen from the nails. If the planks become loose from the nails, then the horizontal beam above the planks offers no support. * * * This is in contrast to the other end. Recollect that the end away from the platform rested upon a sill and was secured by nails. Here, if the planks were to loosen from the nails, then the underlying sill would still offer support.
 Another concern with the subject floor is that its design did not incorporate any redundancy. Redundancy is a generally accepted safety engineering concept. On the subject floor, if the wooden planks were loosened from the nails at the end next to the platform, then the floor would collapse when subjected to a load at that end. However, the addition of a joist beneath the middle portion of the wooden planks would introduce a level of redundancy to the design of the frame of the floor.
* * *
 In summary, it is my opinion that the floor of the outhouse was defective. One end of the wooden planks used in the decking of the floor did not rest upon a structural member. Instead, this end was underneath the structural member and was fastened by nails. There was also insufficient structural support for the midsection of the wooden planks. The design of the floor also failed to utilize redundancy. These design defects could have easily been remedied with the addition of joists beneath the decking in these positions: middle portion of the planks and at the end of the planks next to the platform. Finally, it is my opinion that the subject floor was unreasonably dangerous because it was unable to withstand the ordinary loading created when Mr. Wright entered the outhouse.
In the case at bar, it is undisputed that appellee did not have actual notice of the alleged defect or nuisance in the outhouse. Upon reviewing the record, including the pictures taken by Huston, we find that appellee did not have constructive notice of the defect or nuisance either. Constructive notice exists if the defect or nuisance "existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time, and if it had been discovered it would have created a reasonable apprehension of a potential danger * * *." Franks, 69 Ohio St.3d at 349.
Smith testified in his deposition that the floor of the outhouse was good and solid five days before appellant's fall and that it always seemed good and structured whenever Smith was in the outhouse. Smith also testified that if his employees had noticed any defect in the outhouse, they would have reported it to him, as they had done with regard to the defective condition of the roof. The affidavits of Smith, Johnson, and Clemons all clearly state that neither Smith nor his employees were ever aware of any structural problem with the outhouse. In addition, the affidavits of both Johnson and Clemons also clearly state that although both men cleaned and inspected the outhouse on a regular basis, neither man ever noticed anything indicating that the floor was defective or unsafe.
Neither appellant's deposition nor Huston's affidavit show that there was a genuine issue with regard to appellee's constructive notice of the alleged defect or nuisance. In his deposition, appellant testified that he had used the outhouse before and that he never had any reason to believe that the floor was unsafe. There is thus no evidence from appellant's deposition testimony that there was a visible defect in the floor of the outhouse. In addition, as the trial court stated, "if there was such a defect, there is no more reason why it should have been more obvious to [appellee] and [its] employees than it was to [appellant]."
Appellant testified that after his fall, he noticed some rotten spots on the floorboards around him. There is however no evidence from appellant's deposition testimony or Huston's affidavit and report that these rotten spots were visible upon ordinary inspection, or that if they were visible, they existed for such a length of time that they could or should have been discovered.
In his affidavit, Huston asserts that appellant's fall was caused by a faulty design and construction of the outhouse. Huston further asserts that because the outhouse had been locked since June 1, 1993, the defective floorboards in the back of the outhouse had most likely "been in that condition since before [appellant's] fall * * *." As a result, Huston asserts that appellee should have discovered the defective floorboards upon routine maintenance and inspection of the outhouse and in turn, the design and construction defects.
Huston's allegation that the defective floorboards were in that condition before appellant's fall merely because the outhouse had been locked since the fall is not supported by any other evidence. Smith specifically testified that when he looked into the outhouse five days before appellant's fall, he did not notice the defective floorboards. Nor were the defective floorboards noticed by Johnson when he was in the outhouse on May 27, 1993 to clean it and pour lime into the pit. Thus, there is no evidence in the record that the defective floorboards or the alleged defect or nuisance existed for such a sufficient length of time prior to June 1, 1993 that they should have been discovered.
In addition, Huston's assertion that the outhouse's condition, including the floor, had not changed since the fall merely because the outhouse had been under lock since then does not take into account the natural degradation a building suffers from when it is vacant and unused. The record clearly shows that within three years following appellant's fall, a groundhog had tried to get in the outhouse and that Smith had to deal with the hole the groundhog had made as a result. In addition, the pictures taken by Huston clearly show water stains on the defective floorboards in the back and on the part of the floor adjoining the wall.
Having thoroughly reviewed the record, we find that appellant has made no evidentiary showing that the problem with the floor existed in such a manner that it could or should have been discovered, or that it existed for such a length of time that it should have been discovered. Accordingly, we find that the affidavit and report attached by appellant to his reply to appellee's motion for summary judgment do not show that there was a genuine issue with regard to actual or constructive notice of the alleged defect or nuisance. Thus, with no evidence to demonstrate that the injury to appellant was foreseeable and that appellee was negligent, we hold that the trial court properly granted summary judgment in favor of appellee.
We note that we have affirmed the trial court's judgment, but for different reasons than those set forth in the trial court's decision and entry. A reviewing court passes only upon the correctness of the judgment, not the reasons therefor. Joyce v. General Motors Corp. (1990), 49 Ohio St.3d 93, 96. Thus, an appellate court must affirm a trial court's judgment if upon review any valid grounds are found to support it. Id.
Accordingly, based upon the foregoing reasons, appellant's sole assignment of error is overruled and the judgment of the trial court is affirmed.
WALSH and POWELL, JJ., concur.
[1] In a supplemental affidavit filed on August 16, 1996, Bill Smith, appellee's road and cemetery supervisor, stated that he "recall[ed] from memory * * * that * * * the outhouse existed * * * in the 1940s when [he] would occasionally visit the cemetery with [his] grandmother."
[2] The pictures were taken by Huston on May 28, 1996, the day he inspected the outhouse, thus about three years after appellant's fall. We note that appellant's affidavit is dated after Huston's report was prepared and thus after the pictures were taken.