FRANKS, ADMR., ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* LOPEZ, F.K.A.
MUNGUIA, APPELLANT AND CROSS-APPELLEE; SANDUSKY TOWNSHIP
BOARD OF TRUSTEES ET AL., APPELLEES AND CROSS-APPELLANTS.

[Cite as *Franks v. Lopez* (1994), 69 Ohio St.3d 345.]

(No. 92–1030—Submitted February 2, 1994—Decided May 25, 1994.)

---

*Edward Van Gunten & Co., L.P.A., Edward A. Van Gunten* and *Phillip Browarsky,* for appellants and cross-appellees Lisa Franks and M. Carol Bryant.

*Cooper, Straub, Walinski & Cramer Co., L.P.A.,* and *Thomas J. Tucker,* for appellant and cross-appellee Rhonda L. Lopez.

*Ritter, Robinson, McCready & James* and *William S. McCready,* for appellee and cross-appellant Sandusky Township Board of Trustees.

*Marshall & Melhorn, James H. Irmen* and *Jessica R. Christy,* for appellees and cross-appellants Sandusky County Board of Commissioners and Sandusky County Engineer.

*Amer Cunningham Brennan Co., L.P.A., Richard T. Cunningham* and *Thomas M. Saxer,* urging reversal in part for *amicus curiae,* Ohio Academy of Trial Lawyers.

*John E. Gotherman,* urging affirmance in part for *amicus curiae,* Ohio Municipal League.

---

FRANCIS E. SWEENEY, SR., J. Today we are again asked to interpret R.C. 2744.02(B)(3) to determine when a political subdivision may be liable for failing to keep its roadways "free from nuisance." We are also asked to decide whether the county could be liable for its alleged failure to install a guardrail pursuant to R.C. 5591.36. For the reasons which follow, we decline to expand our definition of the term "nuisance" as found in R.C. 2744.02(B)(3) to embrace design and construction defects or the failure to erect signage or guardrails. However, we hold that questions of fact remain as to whether the county had a statutory duty to install a guardrail at the intersection. Accordingly, we affirm the judgment of the court of appeals.

Appellants seek to impose liability upon the political subdivisions for what they allege is a dangerous intersection. Appellants believe that the intersection was defectively designed, constructed, and maintained. The appellants assert that the combination of the lack of a posted speed limit, lack of lighting at night, lack of an adequate warning sign visible at night, a sharp and sudden curve, uneven pavement, a deficient cross slope, proximity to the river and the absence of a guardrail made the curve deadly and created a nuisance. The county and township respond that they are immune from liability because of sovereign immunity. Specifically, they argue they are immune under R.C. Chapter 2744 because their actions and omissions with regard to these roads were "governmental functions" as defined in R.C. 2744.01(C)(2)(e), (j) and (*l*),[1] and that the "discretion" defenses of R.C. 2744.03(A)(3) and R.C. 2744.03(A)(5) apply.

R.C. Chapter 2744, the Political Subdivision Tort Liability Act, was enacted in response to the judicial abolishment of the doctrine of sovereign immunity. R.C. 2744.02(A)(1) provides that a political subdivision is generally not liable for damages for injury, death, or loss to persons or property incurred in connection with the performance of a governmental or proprietary function of the political subdivision. R.C. 2744.02(B) lists several exceptions to the general grant of sovereign immunity. The subsection relevant here is R.C. 2744.02(B)(3), which provides that political subdivisions are liable for injury caused "by their failure to keep public roads, highways, [and] streets * * * within the political subdivisions open, in repair, and free from nuisance * * *."

However, the Act also enumerates defenses that can be asserted to avoid liability. Pertinent to our discussion are those defenses contained within R.C. 2744.03(A)(3) and (5).

R.C. 2744.03(A)(3) provides immunity to a political subdivision where the act or failure to act by an employee was within the discretion of the employee as to "policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee." R.C. 2744.03(A)(5) provides that a political subdivision is "immune from liability if the injury [or] death * * * resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel,

---

1. R.C. 2744.01(C)(2)(e), (j) and (*l*) include the following in the definition of "governmental" function:

"(e) The regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds;

" * * *

"(j) The regulation of traffic, and the erection or nonerection of traffic signs, signals, or control devices;

" * * *

"(*l*) The provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system[.]"

facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

In *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Road Comm.* (1992), 63 Ohio St.3d 318, 587 N.E.2d 819, we considered a political subdivision's duty to keep its roads free of nuisance.

In *Manufacturer's*, we addressed whether a township's duty under R.C. 2744.02(B)(3) to keep the road free from nuisance included ensuring that corn growing in the road's right-of-way did not obstruct a driver's visibility. Because of R.C. Chapter 2744's recent enactment, *Manufacturer's* provided our first opportunity to construe this law. In deciding the issue, we considered prior case law interpreting R.C. 723.01,[2] which obligates municipalities to keep their roads free from nuisance.

Relevant to our discussion today, we cited *Fankhauser v. Mansfield* (1969), 19 Ohio St.2d 102, 48 O.O.2d 103, 249 N.E.2d 789, where we held that a malfunctioning traffic signal can be a nuisance to orderly urban street traffic, and *Robert Neff & Sons v. Lancaster* (1970), 21 Ohio St.2d 31, 50 O.O.2d 80, 254 N.E.2d 693, where we determined that an overhanging tree limb impeding ordinary traffic could be a nuisance within the meaning of R.C. 723.01.

After construing prior case law, we decided that in determining a township's duty, the proper focus should be on whether a condition exists within the township's control that creates a danger for ordinary traffic on the regularly traveled portion of the road.

We held that a permanent obstruction to visibility in the right-of-way which renders the regularly traveled portions of the highway unsafe for the usual and ordinary course of travel can be a nuisance for which a political subdivision may be liable pursuant to R.C. 2744.02(B)(3). *Id.* at paragraph one of the syllabus.

In a similar vein, we find that the township's alleged failure to maintain the signage already in place may constitute an actionable nuisance claim. A sign which has lost its capacity to reflect is as much an impediment to the safe flow of traffic as a malfunctioning traffic light, overhanging branches or foliage obstructing a driver's view. Due to the proximity of the Sandusky River to the intersection of the two township roads, notice of the curve was vital to the safety of ordinary traffic.

---

2. R.C. 723.01 provides:

"Municipal corporations shall have special power to regulate the use of the streets. Except as provided in section 5501.49 of the Revised Code, the legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair, and free from nuisance."

This does not end the analysis however. In *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 97, 566 N.E.2d 154, 160, a nuisance case decided in part under R.C. 723.01, we reiterated that the political subdivision must have had "either actual or constructive knowledge of the nuisance" before liability can be imposed. There is constructive knowledge if "such nuisance existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger * * *." *Beebe v. Toledo* (1958), 168 Ohio St. 203, 207, 6 O.O.2d 1, 3, 151 N.E.2d 738, 741.

The appellate court correctly held that appellants' evidence created a question of fact as to whether the township had actual or constructive notice. Appellants presented (1) an affidavit from an engineering expert describing the hazard, accompanied by photographic exhibits demonstrating the obviousness of the danger posed by the failure to maintain the reflectorized sign; and (2) the deposition testimony of a nearby resident that there had been at least three previous accidents at this intersection and that the condition of the small directional arrow sign had existed for a substantial period of time. This is ample evidence to create a question of fact concerning the existence of notice.

Overhanging branches and foliage which obscure traffic signs, malfunctioning traffic signals, signs which have lost their capacity to reflect, or even physical impediments such as potholes, are easily discoverable, and the elimination of such hazards involves no discretion, policy-making or engineering judgment. The political subdivision has the responsibility to abate them and it will not be immune from liability for its failure to do so.

Moreover, it is undisputed that the directional arrow sign did not comply with the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways as required by R.C. 4511.11(A). The evidence indicated that in addition to not being reflectorized, the sign was smaller than the recommended size and was not properly placed or checked as required by the manual. While the installation of traffic control devices by a political subdivision may be discretionary pursuant to the manual, once the decision to install has been made, the implementation of that decision is not immune from liability. *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 525 N.E.2d 808.

Appellants, however, not content with this finding, have asked us to expand our nuisance definition to include design and construction defects and the failure to erect signage. This we decline to do. This court has never held that defective design or construction or lack of signage constitutes a nuisance. These categories simply do not constitute a nuisance as this term has been defined by this court. Additionally, these allegations involve discretionary functions as provided in R.C. 2744.03(A)(3) and (5). Thus, the defenses found in R.C. 2744.03(A)(3) and

(5) preclude the imposition of liability on a political subdivision for any acts or omissions related to these discretionary functions. Therefore, appellants' claims pertaining to defective design and construction and the failure to install signage must fail. See, *e.g.*, *Williamson v. Pavlovich* (1989), 45 Ohio St.3d 179, 543 N.E.2d 1242; *Winwood, supra; Fankhauser, supra.* Summary judgment was appropriate on these issues.

Appellants also sought to impose liability upon all the political subdivision defendants based on the absence of a guardrail. Appellants assert the county had a duty to install a guardrail under R.C. 5591.36, and that since the county designed and built both of the roads in question, it should have installed a guardrail during construction. Further, they argue that the township is liable because the lack of a guardrail constituted a nuisance under R.C. 2744.02(B)(3).

However, political subdivisions have broad discretion in determining whether to install signage. See *Winwood, supra.* This is equally true regarding the discretionary decision as to whether to erect a guardrail. Notwithstanding this broad grant of discretion, however, R.C. 5591.36 provides:

" * * * The board [of county commissioners] shall * * * protect, by suitable guardrails, all perpendicular wash banks more than eight feet in height, where such banks have an immediate connection with a public highway other than state highways, or are adjacent thereto in an unprotected condition."

R.C. 5591.37 imposes liability upon the county for accidents or damages resulting from its failure to comply with R.C. 5591.36.

The court of appeals correctly noted that R.C. 2744.02(B)(5) provides an exception to immunity where "liability is expressly imposed upon the political subdivision by a section of the Revised Code, including * * * [section] 5591.37 * * *." Hence, R.C. Chapter 2744 explicitly includes one of the statutes relied upon by appellants as an exception to immunity.

The county contends the elements of R.C. 5591.36 were not met and, therefore, liability cannot be imposed. Essentially the county asserts that "perpendicular" means ninety degrees, the bank in question was not a "wash bank," and even if it was a "wash bank," it was not adjacent to the highway.

In finding that factual questions remain as to whether the county complied with R.C. 5591.36, the appellate court cited *Jenkins v. Harrison Twp. Trustees* (Oct. 4, 1982), Scioto App. No. 1385, unreported, 1982 WL 3545, where that court held that construing "perpendicular wash bank" to mean only a ninety-degree wash bank renders R.C. 5591.36 "almost meaningless."

In *Jenkins,* the court stated:

"* * * Washbanks, over time and in accordance with general principles of rainwater, sediment, and gravity, gradually erode and change their angles. Nature carries no protractor.

"Statutes must be interpreted in a manner rendering them effective, just, reasonable, and capable of execution."

In *Jenkins,* the court found the common meaning of "perpendicular" is "extremely steep" and held that a wash bank which fell eighteen feet at an angle of sixty-five to seventy degrees was perpendicular within the meaning of the statute. The appellate court in the instant case agreed with the *Jenkins* holding and concluded that "perpendicular" can include a slope of seventy degrees, which appellants' evidence revealed the slope in question to be, although the county and township dispute this finding.

Accordingly, the appellate court ruled that questions of fact exist as to whether the bank in question is a "wash bank," whether the wash bank is adjacent to a public highway, and whether the slope is "perpendicular." We agree. The court of appeals' decision on this issue is affirmed.

To summarize, we conclude questions of fact remain as to (1) whether the township breached its duty to keep its roads "free from nuisance" for its alleged failure to maintain the reflectorized sign and its alleged failure to comply with the manual, and (2) whether the county had a duty to install a guardrail pursuant to R.C. 5591.36. We further find, as a matter of law, that the alleged defective design and construction and the failure to erect proper signage do not constitute a nuisance within the meaning of R.C. 2744.02(B)(3). Therefore, the county and township are immune from suit for these claims. Finally, we note the negligence claims against Lopez and Zavala, as well as the statute of limitations defense asserted against Lopez, are still intact and remain to be resolved by the trial court.

*Judgment affirmed.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS and MAHONEY, JJ., concur.

WRIGHT, J., concurs in judgment only.

PFEIFER, J., concurs in part and dissents in part

JOSEPH E. MAHONEY, J., of the Eleventh Appellate District, sitting for RESNICK, J.