OPINION
Plaintiff-appellant Richard Thompson appeals the February 5, 1998 Judgment Entry of the Muskingum County Court of Common Pleas granting summary judgment in favor of defendant-appellee Muskingum County Board of Commissioners.
 STATEMENT OF THE FACTS AND CASE
While making his morning deliveries for his employer, UPS, on June 19, 1995, appellant was involved in a single vehicle accident on Ransbottom Road, a paved two-lane county road in Muskingum County, Ohio. Appellant was operating his delivery van southbound when he was caused to maneuver the vehicle onto the berm on the west side of the road in order avoid a collision with an unidentified northbound motorist, who crossed the center yellow line. The left tires of appellant's delivery truck remained on the paved portion of the road, while the right tires moved onto the berm. Appellant attempted to maneuver the vehicle from the berm back onto the road, however, he lost control of the van, which ultimately, crashed into a wall on the east side of Ransbottom Road. As a result of the accident, appellant suffered severe and permanent injuries.
The County Highway Department is responsible for the maintenance of Ransbottom Road and the berm areas adjacent to the paved portion of the road. The Highway Department last paved Ransbottom Road in May, 1993, and bermed the road in October, 1993.
On June 20, 1996, appellant filed a complaint in the Muskingum County Court of Common Pleas alleging appellee "negligently caused and permitted to exist unreasonably dangerous conditions in the road surface, including . . . an unsafe berm, improper height of the pavement edge, no edge markings, lack of guardrail and no warnings of the condition of the roadway by way of appropriate signage." Appellee filed a timely answer. On October 24, 1997, appellee filed a Motion for Summary Judgment based upon political subdivision immunity pursuant to R.C.2744.02(A), 2744.03(A)(3) and (A)(5). Via Judgment Entry dated February 5, 1998, the trial court granted summary judgment in favor of appellee.
It is from this judgment entry appellant appeals, raising as his sole assignment of error:
 THE TRIAL COURT COMMITTED A REVERSIBLE ERROR IN AWARDING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANT-APPELLEE WHEN A GENUINE ISSUE OF MATERIAL FACT REMAINED TO BE RESOLVED BY THE TRIER OF FACT, I.E., WHETHER SWERVING TO AVOID A COLLISION WITH AN OBJECT IN THE ROADWAY AND DRIVING ON THE SHOULDER OF THE HIGHWAY IS A REASONABLE AND FORESEEABLE USE OF THE SHOULDER. Dickerhoof v. City of Canton (1983) 6 Ohio St.3d 128; Manufacturer's National Bank of Detroit v. Erie County Road Commission (1992) 63 Ohio St.3d 318.
Any other facts relevant to appellant's assignment of error will be contained in our discussion thereof.
 Summary Judgment Standard
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc.
(1987), 30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion the non-moving party has no evidence to prove its case, but must specifically point to some evidence demonstrating the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial.Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v.Burt (1996), 75 Ohio St.3d 280.
It is based upon this standard we review appellant's assignment of error.
 I
In his sole assignment of error, appellant contends the trial court erred in granting summary judgment in favor of appellee. Appellant maintains genuine issues of material fact remain to be resolved by the trier of fact.
In 1985, the Ohio Legislature enacted Chapter 2744 of the Ohio Revised Code. R.C. 2744.02(A) provides, in part:
 * * * Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
R.C. 2744.02(B) lists several exceptions to the general grant of sovern immunity. The subsection relevant to the instant appeal is R.C. 2744.02(B)(3), which provides:
 Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.
Addressing a situation analogous to the case sub judice, the Ohio Supreme Court in Dickerhoof v. City of Canton (1983), 6 Ohio St.3d 128, stated:
 The shoulder of a highway is designed to serve a purpose which may include travel under emergency circumstances. It is for the trier of fact to determine whether swerving to avoid a collision with an object in the highway and driving on the shoulder is a foreseeable and reasonable use of the shoulder. If so, a municipal corporation could be liable under R.C. 723.01[1] for failure to keep the shoulder in repair and free from nuisance, including a chuckhole, rendering the highway unsafe for travel.
Id. at 130.
In Dickerhoof, decedent's father filed a complaint for negligence and wrongful death against the City of Canton. Id. at 128. The complaint asserted: "While . . . decedent was traveling in the southwest 1500 block of Interstate 77 on his 1973 Suzuki motorcycle, he swerved to miss an object in the roadway, and his motorcycle began to travel on the shoulder of the road. As the cycle moved to the shoulder of the roadway, it struck a chuckhole . . ., which immediately abutted the roadway and which [the city] had negligently failed to repair." Id.
The trial court granted the city's motion for judgment on the pleadings and dismissed the complaint for failure to state a claim upon which relief could be granted. Id. at 129. This Court reversed and remanded, concluding the city had a statutory duty to keep its streets "in reasonably safe condition for the ordinary modes of travel." Id.
The Ohio Supreme Court affirmed, holding:
 [A] municipal corporation may be liable for injuries resulting from its failure to keep the shoulder of the highway in repair and free from nuisance where such defects renders the highway unsafe for normal travel * * * It is for the trier of fact to determine whether the defect in the shoulder of the highway constituted a nuisance for which [the City] was responsible and whether the injuries resulted from the defect.
Id. at 131.
In the instant appeal, Dr. Thomas Rockwell, appellant's expert, testified at his deposition as follows:
 Q. Okay. You also formulated an opinion concerning the drop-off. Correct?
A. Yes.
 Q. And your opinion was that there was a pavement berm edge dropped [sic] off six to eight inches for over 100 feet?
* * *
 A. * * * Point A is a seven inch depth going down to point E, which is the deepest drop of eight inches. That refers back to their [the police report] diagram A through E.
* * *
Q. Is that 100 feet from A to E?
 A. A to — let's see, A is 89 feet from the reference point and E is 152 feet from the reference point. And they don't make any statement about the depth between E and F.
Q. So how do you know it is 100 feet?
 A. Well, 100 feet is from A to F. That was the number of feet before he [appellant] finally climbed the edge.
Q. And you said six to eight inches?
 A. Right. All the way to E. It is not reported from E to F.
 Q. Do you have any idea how deep the drop-off was from E to F?
A. No, I don't know precisely.
 Q. Then how do you know it was six to eight inches to 100 feet?
 A. If it was less than that he would have been able to easily get control of the vehicle and bring it back on the road.
Q. If it is less than what?
A. If is less than four inches.
Q. Okay. I thought your report said six to eight?
 A. The report said it was six to eight inches over 100 foot length. Oh, I guess more precisely what the highway patrol has it was 152 back to 89.
Q. From —
 A. 89 to 152. But he probably was beginning his correction maneuver somewhere between D and E and the point where he actually climbs is F.
* * *
 Q. Okay. Just so I'm clear, so two is uncertain? You don't know if it was 100 feet? The six to eight inch drop-off?
 A. We know for sure from the patrol report it is between — 63 feet for sure.
Q. And that is from points A to E?
A. Right.
 Q. You don't have any ides of the depth of the drop-off from point E southbound, do you, sir?
A. Southbound, beyond E?
Q. Yes.
* * *
Deposition of Thomas Rockwell, pp. 50-52.
Dr. Rockwell opined the drop-off at the point appellant climbed was probably six inches. He based this opinion upon his review of appellant's edge climb maneuver. When explaining the points of reference, Dr. Rockwell stated appellant's vehicle was off the road at point A. Point E represents the deepest drop from the road. Point F, which is south of point E, is the point appellant finally climbed. Dr. Rockwell admitted he did not have an exact depth for the drop-off at point F. The distance between point E and point F is 37 feet.
Appellee maintains because appellant failed to establish the exact depth of the drop-off at the accident site, "the evidentiary record before the Court provides no basis for [appellant's] claim that the drop-off at the accident site was 6"-10" in depth." Brief of Defendant-Appellee at 3. We disagree with appellee's assertion. Because the drop-off in the area of the accident measured between 6" and 8" (point A and point E) and point F is only 37' from the last measurement, we find appellant submitted sufficient evidence from which the trier of fact could conclude the drop-off at the accident site was at least 6 inches in depth.
In accordance with Dickerhoof, supra, we find genuine issues of material fact remain to be resolved by the trier of fact. The trier of fact must determine whether the drop-off between the pavement of the road and the berm constituted a nuisance for which appellee was responsible and whether appellant's injuries resulted from the defect[2].
Appellee refers our attention to R.C. 2744.03(A), which enumerates defenses and immunities a political subdivision may assert in order to avoid liability. These defenses and immunities provision read:
 (3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
* * *
 (5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
With regard to appellee's reliance upon the defenses and immunities provision set forth in R.C. 2744.03(A)(3) and (A)(5), we find "[n]either of these two sections apply to . . . appellant's . . . claim founded upon the duty imposed by R.C. 2744.02(B)(3)."See, Scheck v. Licking County Commissioners (July 18,, 1991), Licking App. No. CA3573, unreported. "There was no judgment or decision of discretionary nature present." Id. Accordingly, we find appellant was not required to establish appellee acted with a malicious purpose, or in bad faith, or in a wanton or reckless manner.
Based upon the foregoing, appellant's sole assignment of error is sustained.
The judgment entry of the Muskingum County Court of Common Pleas is reversed and the matter remanded for further proceedings in accordance with this opinion and law.
By: Hoffman, J., Farmer, P.J. and Reader, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Muskingum County Court of Common Pleas is reversed and the case remanded to the trial court for further proceedings in accordance with the law and this opinion. Costs assessed to appellees.
[1] R.C. 723.01 is similar to R.C. 2744.02(B)(3).
[2] Appellee places great emphasis on the Ohio Supreme Court's decision in Franks v. Lopez (1994), 69 Ohio St.3d 345, in support of its position a drop-off is not a nuisance as a matter of law under R.C. 2744.02(B)(3). Franks v. Lopez, supra, does not overrule Dickerhoof, supra. Upon our review, we conclude theFranks decision does not preclude appellee's liability under the facts of this case and the rationale of Dickerhoof, supra.