On January 21, 1997, William Rayburn filed a complaint in the Franklin County Court of Common Pleas, claiming that he suffered certain personal injuries due to the negligence of the two named defendants: the city of Columbus "a/k/a Columbus Municipal Corporation," and the city of Columbus, Department of Street Maintenance and Repair, "a/k/a Department of Highways," (hereinafter jointly referenced "the city"). Mr. Rayburn's wife, Linda Rayburn, was also named as a plaintiff, setting forth a derivative claim for loss of consortium.
Specifically, the plaintiffs claimed that Mr. Rayburn sustained injuries on February 9, 1996, when he slipped and fell on an icy street near an alley behind the Rayburns's residence. They alleged that the accumulation of ice where the fall occurred was due to the "disrepair, improper damage, and defective condition of the alley," which was located in and under the control of the city. The Rayburns further claimed that the city's conduct rose to the level of "willful, wanton and intentional" because it failed to remedy the problem of which it had long been aware. Additional facts are set forth in our discussion of the assignment of error.
Following discovery proceedings, a Civ.R. 56 motion for summary judgment was filed on behalf of the city on January 22, 1998. In a decision rendered May 4, 1998, the trial court ultimately granted the city's motion, holding that the city is statutorily immune from liability. Additionally, the court summarily stated that the ice upon which appellant fell was a "natural accumulation of water," alluding to the general rule that no liability exists under such circumstances. The decision was journalized pursuant to the filing of an entry on July 14, 1998.
The Rayburns (hereinafter "appellants") have timely appealed, assigning a single error for our consideration:
 THE COURT ERRED IN GRANTING THE DEFENDANT'S [sic] MOTION FOR SUMMARY JUDGMENT.
Pursuant to Civ.R. 56(C), summary judgment is a procedural device to terminate litigation and avoid a formal trial where there are no genuine issues of material fact to be tried and the moving party is entitled to judgment as a matter of law.Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66. " '* * * It must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion.' " Viock v. Stowe-Woodward Co.
(1983), 13 Ohio App.3d 7, 12, quoting Norris v. Ohio Std. OilCo. (1982), 70 Ohio St.2d 1, 2. An appellate court reviews a summary judgment de novo. Lorain Natl. Bank v. Saratoga Apts.
(1989), 61 Ohio App.3d 127, 129.
On appeal, appellants contend that the record contains sufficient evidence in support of their claim such that the city cannot be found immune as a matter of law. Specifically, appellants argue that the record amply demonstrates that Mr. Rayburn's fall was caused not by a natural accumulation of ice or snow, but by a persistent sewer drainage problem of which the city had long been aware and for which it was responsible to maintain.
Construing the evidence in favor of appellants, the record reveals the following pertinent facts. According to the deposition testimony of four neighbors familiar with the condition of the alley, a sewer drainage problem existed there for several years before Mr. Rayburn's accident. Essentially, the witnesses testified that the drainage problem caused depressions or "sink holes" into which standing water would accumulate and often turn into ice. Due to the composition of the alley's surface, the ice could become "black ice," making it virtually impossible to see. According to an affidavit executed by Mr. Rayburn, black ice was the direct cause of his fall. Several of the neighbors testified that they called the city to complain about the persistent problem.
The city performed some repair work at the site, "tarring and chipping" a portion of the area, but did not eliminate the underlying drainage problem. Linda Rayburn submitted an affidavit in which she attested to the complaints she had made to the city on several occasions prior to her husband's accident. Deposition testimony of several residents, in addition to the city's related telephone complaint logs and work orders for the subject area, demonstrate several complaints lodged with the city regarding this problem prior to Mr. Rayburn's accident.
The city essentially summarizes the facts it deems relevant for summary judgment as follows: Mr. Rayburn slipped on a patch of ice which he should have known was there.
Pursuant to the Political Subdivision Tort Liability Act, codified in R.C. Chapter 2744 and effective in 1989, the general rule is that political subdivisions are immune from liability for acts classified as "governmental functions" or "proprietary functions." R.C. 2744.02(A)(1). R.C. 2744.01 sets forth definitions of the respective classifications to include, as pertinent here:
 (C)(1) "Governmental function" means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:
* * *
 (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.
 (2) A "governmental function" includes, but is not limited to, the following:
* * *
 (e) The regulation of the use of, and the maintenance and repair of, roads * * * alleys * * * and public grounds * * *[.] (Emphasis added.)
As indicated above, R.C. 2744.01(G)(2) specifies certain acts as proprietary functions, including, as applicable here, the "maintenance, destruction, operation, and upkeep of a sewer system * * *."
Significantly, the immunity afforded a political subdivision pursuant to R.C. 2744.02(A)(1) is "not absolute, but is, by its express terms, subject to the five exceptions to immunity listed in former R.C. 2744.02(B)." Cater v. Cleveland (1998),83 Ohio St.3d 24, 28, citing Hill v. Urbana (1997), 79 Ohio St.3d 130. In Cater, the Supreme Court of Ohio recently set forth the appropriate three-tiered analysis for determining whether a political subdivision is immune from liability. Once immunity is established under the general rule of R.C.2744.02(A)(1), the second inquiry of the analysis is whether any of five enumerated exceptions set forth in subsection (B) apply.
In its decision, the trial court acknowledged, without analysis, the existence of the statutory exceptions to the general immunity rule. Pursuant to R.C. 2744.02(B), the city may be liable for losses caused by certain acts or omissions in connection with a governmental function or proprietary function, in pertinent part, as follows:[1]
 (B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
* * *
 (2) Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.
 (3) Political subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks * * * or public grounds within the political subdivisions open, in repair and free from nuisance * * *. (Emphasis added.)
Pursuant to the statutory exceptions, therefore, the city may be liable in damages for losses caused by negligence in the performance of proprietary functions, which, by statutory definition, include maintenance of sewer systems. The city may also be found liable for failure to perform properly a governmental function: maintaining roads and alleys, or otherwise keeping them free from nuisance. However, determining whether one of the enumerated exceptions applies does not end the inquiry. If an exception to immunity exists, the analysis proceeds to a third step.
The final step in the analysis, after finding that an exception to immunity exists, is to determine whether immunity can be reinstated. To do so, the political subdivision must be able to maintain that one of the defenses set forth in R.C.2744.03 applies. Cater, supra at 28.
The trial court found that R.C. 2744.03 provides a "complete * * * immunity" to the city. Specifically, the court cited R.C.2744.03(A)(5):
 The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner. (Emphasis added.)
The trial court opined that the record "amply demonstrates that the City took measures to repair and upkeep the subject alley at various times throughout the years before the injury using [its] 'equipment, supplies, materials, personnel, facilities, and other resources' within the discretion mandated to it by the state legislature." Therefore, the court concluded that the city is immune because no evidence indicates that the city exercised its discretion with the requisite malicious purpose, bad faith, or wanton or reckless conduct. (Decision at 3.)
Thus, the relevant inquiry before us is whether the trial court erred in finding the city's conduct to be an exercise of its discretion such that, as a matter of law, it could not be construed as malicious, reckless or otherwise an exception to the umbrella of immunity.
We agree with appellants that the record contains sufficient evidence such that summary judgment should not have been granted as to the city's immunity because there exist genuine issues of fact. However, as emphasized by the Cater court, a determination that factual issues exist does not test the merits of appellants' underlying claims. Instead, our holding is limited to a determination that the trial court erred in granting summary judgment for the city on the immunity issue.
First, based upon recent case law from the Supreme Court of Ohio, we find that the record is sufficient to create a factual issue as to whether the long-standing sewage problem created a known nuisance. As stated by the court in Cater, supra, "the phrase 'free from nuisance' in former R.C. 2744.02(B)(3) has been interpreted most often by [the court] in the context of an alleged failure by a political subdivision to keep its roads and highways free from physical obstructions that interfere with visibility and create an unsafe condition." Id. at 30. See, also, Franks v. Lopez (1994), 69 Ohio St.3d 345, 348-349. There can be no dispute that the city here had "actual or constructive knowledge" of the problem such that the threshold notice requirement is readily satisfied. Id., citingVogel v. Wells (1991), 57 Ohio St.3d 91, 97. Thus, a factual issue is created as to whether the city's conduct, through acts or omissions in exercising its judgment to address the problem, created or allowed to remain an unreasonable risk of harm.Cater, supra at 31.
The same evidence is sufficient to create a factual issue as to the whether the city's conduct amounted to the "reckless" exception to the R.C. 2744.03(A)(5) general grant of immunity for injuries resulting from its "exercise of judgment or discretion in determining whether to acquire, or how to use" certain equipment, materials or personnel. As indicated above, the trial court summarily concluded that the record did not contain sufficient evidence to support a finding of wanton or reckless conduct by the city because it "* * * took measures to repair and upkeep the subject alley at various times throughout the years before the injury"; therefore, the court determined, as a matter of law, that the city had an "absolute" defense to liability. We disagree.
For purposes of summary judgment, a factual issue exists as to whether the city's conduct, in taking the measures it did take to address the problem, was reckless or otherwise within the scope of the exception. In Cater, supra at 33, in the context of reviewing the grant of a directed verdict in favor of the city on an R.C. 2744.03(A)(5) immunity issue, the court stated:
 This court has defined the term 'reckless' to mean that the conduct was committed ' "knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' " Marchetti v. Kalish (1990), 53 Ohio St.3d 95, 96 * * *, fn. 2, quoting 2 Restatement of the Law 2d, Torts (1965), 587, Section 500. The conduct by the city * * * presents a question of fact for the jury to consider * * *." (Emphasis added.)
In a similar analysis of a pre-Act case, the Supreme Court of Ohio stated the well-established principle that "* * * while a municipality may not be held liable for acts or omissions involving the exercise of a legislative, judicial or discretionary function, liability may attach where a decisionhas been made to engage in a certain activity or function."Winwood v. Dayton (1988), 37 Ohio St.3d 282, 285. (Emphasis added.) This principle has been applied after the 1989 effective date of the Act, as well. Franks, supra at 349 (while installation of traffic device may be discretionary, once decision to install has been made, implementation of the decision is not immune from liability); Feitshans v. Darke Cty.
(1996), 116 Ohio App.3d 14, 20-21. Applying that principle here, once the city decided to attempt repairs or to maintain the alley, the city's actual conduct in its undertaking is not necessarily immune from liability.
We also find error in the trial court's apparent conclusion, which substantively amounts to a single-sentence aside in the court's decision, that no liability exists because the ice upon which appellant fell "* * * was a natural accumulation of water * * *." To the contrary, the record contains evidence, again construed in favor of appellants, suggesting that while the ice itself may have directly resulted from inclement weather, theaccumulation of the ice may well have been caused by unnatural forces, such as an intervening act or omission that perpetuates or aggravates the preexisting presence of the ice. See, e.g.,Porter v. Miller (1983), 13 Ohio App.3d 93, 95. The trial court's conclusory statement to the contrary does not suffice to decide this specific issue.
For the foregoing reasons, the assignment of error is sustained.
Having sustained the assignment of error, the judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
PETREE and BROWN, JJ., concur.
[1] As this case was commenced in January 1997, arising from a February 1996 incident, the trial court and the parties erroneously cite various portions of the June 1997 amended version of R.C. Chapter 2744. For purposes of the disposition of this case, the amended language is inconsequential. However, for clarification, our citations are to the former statute in effect at the relevant time.