JOURNAL ENTRY AND OPINION
Plaintiffs-appellants Erika Maxel and her parents, Milan Maxel and Daniella Maxel, appeal from the trial court's order granting the motion for summary judgment of the defendant-appellant The City of Cleveland Heights. Erika Maxel suffered an eye injury while attending an ice hockey game at the Cleveland Heights Pavilion (Pavilion). The court found that under Section 2744 of the Revised Code the appellee was granted statutory immunity from its actions or inactions.
The appellants' complaint alleges that on January 14, 1995, Erika Maxel, while a minor, was struck and injured by a hockey puck while attending an ice hockey game at the Pavilion. The appellants allege that the appellee created and/or maintained an insufficiently protected spectator area thereby creating a hazardous condition or nuisance. The appellee filed a motion for summary judgment arguing that there is no nuisance because the premises was maintained in a reasonably safe condition, the city has statutory immunity, and Ms. Maxel assumed the risk of injury.
In her deposition, Ms. Maxel stated that she attended the hockey game with friends. She had never been to the Pavilion before, but she had once been to a Lumberjacks game at the Richfield Coliseum. Ms. Maxel was seated in the bleachers in second row from the bottom and had just turned her head to answer a question when the puck struck her face. She stated that her seat was below the level of the plexiglass barricade which separate the rink from the bleachers.
Ms. Maxel testified that she was informed by others that the puck came over the glass. When asked if she appreciated that a puck moved at a "pretty fast rate of speed," she responded "Sort of." (Depo. T. 51.) Ms. Maxel realized while watching the hockey game at the Pavilion that hockey is a fact-paced game between the players (Depo. T. 52). Ms. Maxel did not believe that she was in danger while she was watching the game at the Pavilion. She was not concerned about the puck exiting from the ring and landing in the stands. Ms. Maxel stated: "The glass was above me. I never would have even thought — ." (Depo T. 52.)
Attached to the motion for summary judgment are sections of the appellee's answers to the appellants' interrogatories. The appellee stated since the inception of the ice rink in 1969, there have been protective boards and glass. The protective netting was installed by the city's public works department and has been there for numerous years. The original date of installation is unknown, but in 1993 new netting was installed. The protective glass was installed by Holmsten, now known as Rink Systems. The ice rink, protective glass, and netting are maintained by the city's public works department. The decision as to where to place the netting and the height of the glass was made by the recreation department and the public works department in accordance with commonly accepted safety and protective standards for ice rinks. In the interrogatories, the city also stated that the area was in excellent condition and that no previous problems had been reported.
Attached to the brief in opposition to the appellee's motion for summary judgment, the appellants presented the affidavit of recreation safety expert Stan Brekne. Mr. Brekne opined that commonly accepted safety and protective standards for ice rinks were violated when the spectator area, including the bleachers, was raised approximately thirty-six to forty inches above ground level. He stated that raising the entire area to such a height above ground level constitutes a public nuisance and a significant hazard to the public. Another hazard was the failure to protect spectators with safety nets. The responsibility for a safe-viewing area, and for maintaining the area in a reasonably safe condition, rested with the appellee. It is Mr. Brekne's opinion that the owners and operators of the Pavilion should have recognized the safety shortcomings and warned the public.
The appellants set forth three assignments of error.
The appellants' third assignment of error merely sets forth the standard of review on a motion for summary judgment:
 THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEES' MOTION FOR SUMMARY JUDGMENT SINCE GENUINE ISSUES OF MATERIAL FACT EXIST AND DEFENDANT-APPELLEES ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.
In this assignment of error, the appellants set forth the standard of review for a motion for summary judgment and assert that the trial court erred in granting the motion in this particular instance.
This court reviews the lower court's grant of summary judgmentde novo. Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704. An appellate court applies the same test as the trial court.Zaslov v. The May Dept. Stores Co. (Oct. 1, 1998), Cuyahoga App. No. 74030, unreported. Summary judgment is appropriately rendered when no genuine issue as to any material fact remains to be litigated; the moving party is entitled to judgment as a matter of law; it appears from the evidence that reasonable minds can come but to one conclusion; and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Turner v. Turner (1993), 67 Ohio St.3d 337, citing toTemple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, andHarless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. A court is permitted to grant a motion for summary judgment where all of the tests provided in Civ.R. 56 are met. See Celotex Corp.v. Catrett (1986), 477 U.S. 317, 323.*/*
The appellants' first assignment of error:
 THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEES' MOTION FOR SUMMARY JUDGMENT BECAUSE DEFENDANT-APPELLEES ARE NOT STATUTORILY IMMUNE FROM LIABILITY UNDER THE CIRCUMSTANCES.
In this assignment of error, the appellants premise their arguments on the belief that the operation and control of the Pavilion by City of Cleveland Heights constituted a proprietary function for which the city is liable with respect to its negligent acts. The appellants also state that political subdivisions are liable for negligence occurring within or on the grounds of a building used in connection with the performance of a governmental function. Finally, the appellants argue that safety standards which protect the public from an unreasonable risk of danger are created as a matter of law, and therefore, the defenses in R.C. 2744.03 do not apply.
In Cater v. City of Cleveland (1998), 83 Ohio St.3d 24, the Supreme Court set forth a three-tiered analysis for determining whether a political subdivision has immunity from liability. Political subdivisions have been given a broad grant of immunity in R.C. 2744.02(A). The immunity afforded a political subdivision in R.C. 2744.02(A)(1) is not absolute, but is, by its express terms, subject to the five exceptions to immunity listed in former R.C.2744.02(B). Hill v. Urbana (1997), 79 Ohio St.3d 130. Finally, under the third tier of analysis, immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies.
In the case sub judice, both parties acknowledge that Cleveland Heights is a political subdivision and is covered by the broad statement of immunity set forth in R.C. 2744.02(A). In order to move to the next tier, this court must determine whether the operation and control of the Pavilion was a governmental function or proprietary function. The appellants maintain that the operation of the Pavilion is a proprietary function under R.C.2744.01(G)(2)(e)[1] which states:
 (G)(2) A "proprietary function" includes, but is not limited to, the following:
* * *
 (e) The operation and control of a public stadium, auditorium, civic or social center, exhibition hall, arts and crafts center, band or orchestra, or off-street parking facility.
However, in Cater, supra, the Supreme Court determined that the operation of an indoor swimming pool is a governmental function under R.C. 2744.01(C)(2)(u). R.C. 2744.01(C)(2)(u) states:
 (C)(2) A "governmental function" includes, but is not limited to, the following:
* * *
 (u) The design, construction, reconstruction, renovation, repair, maintenance, and operation of any park, playground, playfield, indoor recreational facility, zoo, zoological park, bath, or swimming pool or pond, and the operation and control of any golf course;
The Pavilion falls within the category of an indoor recreational facility. For purposes of determining whether or not Cleveland Heights was performing governmental or proprietary functions, this court is unable to find any characteristics distinguishing an indoor swimming pool from an indoor ice hockey rink. Pursuant to Cater, supra, this court finds that the trial court did not err in placing the Pavilion in the category of a governmental function.
This court must next determine whether any of the five exceptions in R.C. 2744.02(B) are applicable. Even where an activity is defined as a governmental function, it is still subject to the five exceptions in the former R.C. 2744.02(B).Cater, supra.
The appellants herein argue that the appellee has liability for performance of its governmental acts under R.C. 2744.02(B)(4). This section of the code provides that political subdivisions are liable for injury, death, or loss to persons or property caused by negligence of employees and which occur within or on the grounds of buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility.
In Cater, supra, the Supreme Court specifically held: "Although former 2744.02(B)(4) may be applicable to other governmental functions, not specifically listed in the statute, we believe that it does not apply to an indoor swimming pool." The court continued, stating that unlike a courthouse or office building where government business is conducted, a city recreation center houses recreational activities. As statedsupra, for the purposes of application of the sovereign immunity statutes, this court can find no distinction between an indoor swimming pool and an indoor ice hockey rink.
Since the appellants have also alleged that the appellee created a nuisance, this court must examine two Supreme Court cases for guidance. In Cater, supra, the court found that under R.C. 2744.02(B)(3) the indoor pool constituted a `public grounds' that the city was required to keep free from nuisance. Therefore, this court finds that an indoor ice rink, open to the public, must likewise fall within the definition of public grounds.
The more difficult question is whether or not the raised bleachers and lack of netting in front of the spectators constituted a nuisance. To answer this question, this court next considers Franks v. Lopez (1994). 69 Ohio St.3d 345. In Franks,
the court declined to expand its definition of the term nuisance as found in R.C. 2744.02(B)(3) to embrace design and construction defects in a dangerous intersection. The court also found that recovery was precluded for the refusal to install signage at the intersection. The court went on to state that these activities involve discretionary functions as provided for in R.C.2744.03(A)(3) and (5).
The legislature has determined that political subdivisions have certain defenses which may be asserted to establish non-liability. R.C. 2744.03(A)(3) and (5) state:
 (3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
 (5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
Here, appellants do not contest that the protective glass and protective boards have been a part of the building since its inception. Nor have the appellants contested that the decision as to where to place the netting and the height of the glass were made by the recreation department and the public works department. The city stated that these decisions were made in accordance with commonly accepted safety and protective standards for ice rinks. The placement of the bleachers, the glass, and the alleged failure to provide sufficient netting are discretionary decisions made in connection with the construction and design of the building. Under Franks, supra, the trial court did not err in finding that the decisions of the appellee were discretionary.
The appellants' first assignment of error is not well taken. Since the appellee has sovereign immunity for its decisions, the appellants' second assignment of error is moot.
Judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
ANN DYKE, P.J., and MICHAEL J. CORRIGAN, J., CONCUR.
 __________________________________ JAMES D. SWEENEY JUDGE
[1] This court is applying the versions of R.C. 2744.01, R.C.2744.02 and R.C. 2744.03 in effect on the date of the accident.