OPINION
{¶ 1} The administrators of the estates of Daniel Ostendorf and Kevin Lapp ("hereinafter collectively referred to as "the estates") appeal from the trial court's grant of summary judgment in favor of the Montgomery County Board of Commissioners ("the Board") and its denial of the estates' motions for summary judgment.
 {¶ 2} The events giving rise to the estates' claims are undisputed. In the early morning hours of December 27, 1998, Daniel Ostendorf was a passenger in a car driven by Kevin Lapp when the car was involved in a one-car accident. Both men had been drinking prior to the accident, and their blood alcohol levels were well above the legal limits. At about 2:15 a.m., the car left the roadway on westbound West Alexander-Bellbrook Road as it approached county bridge #0197, which crosses Holes Creek at the border of Washington and Miami Townships in Montgomery County. The road curves slightly as it approaches the bridge, and Lapp failed to negotiate the curve. After hitting a road sign and a mailbox, the front driver's side of the car struck the outer wing-wall on the northeast corner of the bridge, causing the car to flip and to land upside down in the dry creek bed below. The car then burst into flames, and both men were killed.
 {¶ 3} The estate of Ostendorf filed a complaint against Lapp's estate, several insurance companies, and the Board. Only the claim against the Board is at issue in this appeal. Lapp's estate also filed a crossclaim against the Board. The estates asserted that the Board had acted negligently and had breached a statutory duty in failing to erect a guardrail that would have prevented the car from falling into the creek.
 {¶ 4} The Board filed a counterclaim for declaratory judgment, contending that it had fulfilled its obligations pursuant to R.C. 5591.36 and R.C. 5591.37 with respect to the guardarails and, in the alternative, that the statutes were void for vagueness. The Board subsequently filed a motion for summary judgment, and the trial court granted this motion. The estates appeal from the trial court's judgment, raising two assignments of error. To facilitate our discussion, we will discuss the first and second assignments together. The estate of Ostendorf also raises a third assignment in its reply brief.
 {¶ 5} 1. "The trial court erred to the prejudice of the appellants when it refused to consider the expert deposition testimony and affidavits of appellants['] expert witnesses peter parsonson and frederick lickert in support of appellants['] motion for summary judgment and in opposition to appellee montgomery county's motion for summary judgment."
 {¶ 6} 2. "The trial court erred to the prejudice of appellant by granting appellee montgomery county's motion for summary judgement and denying appellants['] motion for summary judgment."
 {¶ 7} Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made.State ex rel. Grady v. State Emp. Relations Bd.,78 Ohio St.3d 181, 183, 1997-Ohio-221, 677 N.E.2d 343; Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46. The moving party "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt (1996), 75 Ohio St.3d 280,293, 662 N.E.2d 264. If the moving party satisfies its initial burden, "the nonmoving party then has a reciprocal burden * * * to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id.; see Civ.R. 56(E). The nonmovant may not rest on his pleadings, but must produce evidence on any issue for which he bears the burden of production at trial. See Wing v. AnchorMedia, Ltd. of Texas (1991), 59 Ohio St.3d 108, 111,570 N.E.2d 1095.
 {¶ 8} As a preliminary matter, we note that the estates' experts, in depositions and affidavits, offered opinions about whether the Board had complied with the requirements of the Revised Code with respect to the guardrails around the bridge. The appropriateness of these opinions is disputed by the parties. The estates attempt to distinguish between "`engineering' decisions and issues" and "`legal' decisions and issues," characterizing the expert opinions as engineering opinions. Without delving into the distinction between "engineering" and "legal" opinions, we simply note that the trial court was the arbiter of all issues regarding what the law required, and it was not required to consider expert opinion on that issue.
 {¶ 9} Construing the evidence in the light most favorable to the estate, the trial court concluded that there was no genuine issue of material fact as to whether the guardrails had complied with R.C. 5591.36 at the time of the accident. R.C. 5591.36
provides, in pertinent part:
 {¶ 10} "The board of county commissioners shall erect and maintain, where not already done, one or more guardrails on each end of a county bridge, viaduct, or culvert more than five feet high and on each side of every approach to a county bridge, viaduct, or culvert, if the approach or embankment is more than six feet high. The board shall also protect, by suitable guardrails, all perpendicular wash banks more than eight feet in height, where such banks have an immediate connection with a public highway other than state highways, or are adjacent thereto in an unprotected condition."
 {¶ 11} R.C. 5591.37 provides that failure to comply with R.C.5591.36 shall render the county liable for all accidents or damages as a result of such failure.
 {¶ 12} One of the estates' experts, Peter Parsonson, testified that the Board had not complied with R.C. 5591.36 with respect to the northeast corner of the bridge because the guardrail in place there did not meet the standards set forth by either the Ohio Department of Transportation ("ODOT") or the American Association of State Highway and Transportation Officials ("AASHTO"). The trial court determined, however, that R.C. 5591.36 did not require compliance with either of these standards. As discussed supra, it was within the province of the trial court, not the experts, to determine what the law required. We agree with the court's determination that, as a matter of law, R.C. 5591.36 does not require compliance with ODOT or AASHTO standards.
 {¶ 13} The trial court addressed each of the three circumstances set forth in R.C. 5591.36 requiring guardrails on or around county bridges: 1) guardrails are required on each end of the bridge where the bridge is more than five feet high; 2) guardrails are required where the approach to the bridge is more than six feet high; and 3) guardrails are required on all perpendicular wash banks more than eight feet high if they are connected or adjacent to a public highway.
 {¶ 14} One of the estates' experts admitted that the guardrail on the bridge extended past the end of the bridge, i.e., the concrete wing-wall, to a point where the bridge was less than five feet high. The photographs also demonstrate this fact. Moreover, the trial court found that there was no distinction between a bridge rail, as discussed by the estates' experts, and a guardrail, because the experts admitted that there was no meaningful distinction. Thus, the trial court properly concluded that there was no genuine issue of material fact as to whether the guardrail on the end of the bridge complied with R.C.5591.36.
 {¶ 15} The estates' experts asserted that the approach to the bridge warranted a guardrail because the height of the approach was greater than six feet as measured by the difference in height between the approach to the bridge and the "bottom of the water" that the bridge spanned. The court concluded that this manner of calculating the height of an embankment was not supported by Ohio law, and that an embankment refers to the area along the side
of the approach to the bridge. See Board of Commrs. v. Darst
(1917), 96 Ohio St. 163, 117 N.E. 166; Walthall v. Board ofCommrs. (Greene Cty. 1934), 18 Ohio Law Abs. 30. The court noted that there was no "specific allegation that the embankment running parallel to the western approach of the Bridge exceeds six feet," and that, as such, there was no genuine issue of material fact as to whether additional guardrails had been required by R.C. 5591.36. The court also noted that the photographs demonstrate that the embankment was not six feet high. As such, there was no genuine issue of material fact as to whether the guardrail along the approach to the bridge complied with R.C. 5591.36.
 {¶ 16} Finally, the court turned to the issue of perpendicular wash banks. One of the estates' experts, Parsonson, contended in an affidavit that Holes Creek had perpendicular wash banks in excess of eight feet, which required the county to install guardrails pursuant to R.C. 5591.36. However, he had previously testified in his deposition that perpendicular wash banks were not at issue in this case. The court therefore disregarded Parsonson's affidavit to the extent that it directly contradicted the prior deposition testimony, relying on Rogan v.Beerman Realty Co. (Feb. 20, 1987), Montgomery App. No. 9706.[1]
 {¶ 17} The estates correctly point out that the trial court erred in relying on Rogan. The holding in that case was reversed in Bowen v. Kil-Kare, Inc. (1992), 63 Ohio St.3d 84,88, 585 N.E.2d 384. In Bowen, the supreme court held that, pursuant to Civ.R. 56(C), the evidence considered on summary judgment must be construed in the light most favorable to the party defending the motion even where a witness for that party submits a favorable affidavit contradicting that witness's earlier, unfavorable deposition testimony. Therefore, the trial court erred in refusing to consider the affidavits. We will review the evidence to determine whether the trial court's refusal to consider the affidavits was harmless.
 {¶ 18} "Perpendicular wash bank" is not defined in the Revised Code. However, the name suggests, and the estates' expert agreed, that the term refers to a riverbank that is "essentially vertical." In this context, the term "perpendicular" has also been defined as "extremely steep." Jenkins v. Harrison Twp.Trustees (Oct. 4, 1982), Scioto App. No. 1385. However, the supreme court has approved a holding that the term "perpendicular" should not be interpreted literally with respect to wash banks, meaning only a ninety-degree wash bank, because to do so would render R.C. 5591.36 "almost meaningless." Franks v.Lopez (1994), 69 Ohio St.3d 345, 350, 632 N.E.2d 502, citingJenkins, supra.
 {¶ 19} The Jenkins court held that a wash bank which fell eighteen feet at an angle of sixty-five to seventy degrees was perpendicular within the meaning of the statute. Likewise, the appellate court in Franks found that "perpendicular" can include a slope of seventy degrees. Franks,69 Ohio St.3d at 351. A wash bank having a slope of forty-five degrees has been held not to require guardrails because it is not a perpendicular wash bank within the meaning of the statute. Board of Commrs. v.Boucher (1918), 98 Ohio St. 263, 256, 120 N.E. 700.
 {¶ 20} In this case, Parsonson stated, in a conclusory fashion, that the perpendicular wash banks were "more than eight feet in height where such banks have an immediate connection with the highway or are adjacent thereto in an unprotected condition." Another expert, Ruth Campbell, made a similar statement. These statements mirror the statute. Pursuant to Bowen,63 Ohio St.3d at 88, we must accept Parsonson's affidavit for purposes of summary judgment notwithstanding his deposition testimony that wash banks did not pertain to this case. Campbell had not contradicted her affidavit in other testimony. The question, then, is whether these statements were sufficient to create a genuine issue of material fact regarding the need for a guardrail.
 {¶ 21} Parsonson did not provide any specific information regarding the steepness of the bank or its height except for his opinion that the approach to the bridge, as measured from the creek bed to the road, was more than six feet high. Neither Parsonson's nor Campbell's affidavit included any basis for the conclusion that there was a perpendicular wash bank at this location, and neither discussed the slope of the wash bank. From the numerous pictures offered into evidence, it does not appear that the slope approached sixty-five or seventy degrees. In fact, the survey incorporated into the affidavit of Ruth Campbell on behalf of the estates establishes that the wash bank's angle was approximately forty-five degrees, because it illustrates a drop of approximately ten feet over a span of approximately ten feet. As discussed supra, a forty-five degree angle is far less than the angle required to satisfy the definition of a perpendicular wash bank. See Franks, 69 Ohio St.3d at 350; Boucher,98 Ohio St. at 256; Jenkins, supra.
 {¶ 22} Moreover, the trial court observed that the car had left the roadway 194 feet before it reached the wing-wall of the bridge and the bank of the creek. It was undisputed that, at the point where the car left the roadway, the ground was almost level to the roadway and no guardrail was required. It was also undisputed that the car never returned to the road and that it continued along the grassy right-of-way until it struck the outer wing-wall. Even construing all of the evidence in the estates' favor, we are constrained to conclude that there was no genuine issue of material fact as to the existence of a perpendicular wash bank. The civil engineer's evidence offered by the estates' expert suggests an angle of only forty-five degrees for the slope of the wash bank. As a matter of law, we conclude that a forty-five degree angle is not "perpendicular" within the meaning of R.C. 5591.36.
 {¶ 23} Finally, the trial court noted that the estates' experts made much of the fact that the corners or wing-walls of the bridge were unprotected. This assertion is debatable, but the trial court disposed of the issue by pointing out that the statute does not require the protection of the bridge's corners. We agree with the trial court that, as a matter of law, R.C. 5911.36 did not impose such a duty.
 {¶ 24} In sum, the trial court properly concluded that the estates had failed to create a genuine issue of material fact that the guardrails at the ends of the bridge or along the approach to the bridge had failed to comply with R.C. 5591.36 at the time of the accident. Similarly, the estates failed to create a genuine issue of material fact as to whether a perpendicular wash bank more than eight feet in height had existed that was immediately connected or adjacent to the public highway.
 {¶ 25} The first and second assignments of error are overruled.
 {¶ 26} In its reply brief, the estate of Ostendorf raises a third assignment of error, styled as the "first additional assignment of error."
 {¶ 27} "The trial court erred to the prejudice of the plaintiff-appellants when it denied plaintiff-appellant[']s motion to strike defendant-appellee's affirmative defenses as they relate to Ohio Revised Code § 5591.36 and § 5591.37, and thereafter considered evidence relating to those affirmative defenses in granting the defendant-appellee's motion for summary judgment."
 {¶ 28} The Ostendorf estate claims that the trial court erred in failing to strike the Board's affirmative defenses because R.C. 5591.36 and 5591.37 create a strict liability offense. Specifically, the estate wanted evidence of the decedents' intoxication stricken from the record, arguing that intoxication was irrelevant to whether the guardrails had met the statutory requirements. The trial court refused to rule on the motion to strike because it found that the Board had complied with the mandates of R.C. 5591.36.
 {¶ 29} Pursuant to App.R. 16(C), reply briefs are to be used only to rebut arguments raised in the appellee's brief. An appellant may not use a reply brief to raise new issues or assignments of error. Durham v. Pike Cty. Joint VocationalSchool, 150 Ohio App.3d 148, 151, 779 N.E.2d 1051,2002-Ohio-6200, ¶ 12, citing Sheppard v. Mack (1980),68 Ohio App.2d 95, 97, 22 O.O.3d 104, 427 N.E.2d 522, fn. 1. Therefore, we need not address this argument.
 {¶ 30} The Ostendorf estate's "first additional assignment of error" is overruled.
 {¶ 31} The judgment of the trial court will be affirmed.
Judgment affirmed.
Fain, P.J., and Grady, J., concur.
[1] The estates claim that the trial court improperly disregarded the affidavits of two experts on this basis, but only one expert's affidavit addressed the statutory requirements for guardrails.