DECISION AND JUDGMENT ENTRY
This is an appeal from the Sandusky County Court of Common Pleas, which granted summary judgment in favor of appellee, Bellevue City Schools Board of Education, against appellant, Antoinette Marie Beck, Administratrix of the estate of Christian Anthony Beck, deceased. For the reasons that follow, we reverse the decision of the trial court.
This matter arose as a result of the tragic death of Christian Anthony Beck, six years old, on February 26, 1998. On that date, Christian was struck by a semi tractor trailer, operated by an employee of Adam Wholesalers, Inc., during an outdoor recess at York Elementary School, in Bellevue, Ohio.
On appeal, appellant sets forth the following four assignments of error:
 "I. The trial court erred in finding that the nuisance exception to immunity in R.C. 2744.02(B)(3) is not applicable.
 "II. The trial court erred in interpreting R.C. 2744.02(B)(4) as requiring that injury, death, or loss occur on the grounds of the school.
 "III. The trial court erred in finding that defendant Bellevue City Schools Board of Education is afforded immunity for an alleged `exercise of discretion' pursuant to R.C. 2744.03(A)(5).
 "IV. The trial court erred in finding no genuine issue of material fact with regard to defendant Bellevue City Schools Board of Education's recklessness, so as to satisfy the exception to immunity in R.C. 2744.03(A)(5).
 "V. The trial court erred in refusing to find R.C. Chapter 2744 unconstitutional."
The relevant facts of this case are as follows. On February 26, 1998, Christian Beck was in pre-first grade at York Elementary School which is located in Bellevue, Sandusky County, Ohio, along U.S. Route 20. Weather permitting, Christian received two fifteen minute recess periods daily. On the date of the accident, Christian's recess periods were from 11:30 to 11:45 a.m. and 1:00 to 1:15 p.m. At the 1:00 p.m. recess there were approximately one hundred fifty children on the playground supervised by Rebecca Cotterill, a first grade teacher, and Laura Thompson, a teacher's aide in the severe behavioral disability class ("SBH").
In her deposition Beverly DeBlase, principal at York School, described the playground schematics. To the west of the school, students were not to go past the busses. The boundary to the north was the school building and playground equipment. The students were not to go behind the building. The eastern boundary was the main or original part of the building. Finally, the southern boundary, which was in front of the school and adjacent to U.S. Route 20, was even with some playground equipment. There was a yellow line on the blacktop to indicate the boundary. Several feet beyond this line were orange cones which were to prevent vehicular traffic from entering the playground.
Thompson testified that during recess she was primarily responsible for her SBH students. She testified that she was not aware of the yellow line and that it served as part of the southern playground boundary. She did testify that the students generally were not to go beyond the playground equipment south of the building.
On the date of the accident, Thompson was supervising her children at the merry-go-round, south of the building. She left the children but as she looked back to make certain they were following her instructions, she spotted Christian trying to pick up a ball and running toward the cones. Once she realized he was not stopping, she began "screaming" at him to try and get him to stop. Thompson testified that Christian kept kicking the ball further toward the road each time he attempted to pick it up. She then saw him get hit by the semi truck.
During her deposition, Cotterill testified that at the start of the 1:00 p.m. recess on the date of the accident, she was busy making certain that the children who had gotten in trouble during the prior recess were sitting along a wall where they were to stay as punishment. Cotterill next noticed Thompson running toward her and saying that someone had been hit. Cotterill went to Christian and immediately ascertained that he was dead.
Regarding playground rules, Cotterill testified that each teacher reviewed them with their students. She indicated that she felt that a verbal warning about playground safety and boundaries was sufficient to inform the younger students. Cotterill further testified that playground balls had crossed the yellow line on several occasions and, on each occasion, the student would inform a teacher and the teacher would retrieve it. Appellant commenced the instant action on April 27, 1998, naming as defendants appellee Bellevue City Schools Board of Education, which operates York School, semi truck driver Floyd D. DeCair and his employer Adam Wholesalers, Inc. On March 8, 1999, appellant filed her first amended complaint. As to appellee, the complaint alleged negligence in its failure to erect a fence, failure to activate the school zone flashing lights during recess, and failure to maintain an effective barrier or boundary. Appellant further alleged that appellee failed to provide adequate supervision of the children during recess.
Appellee filed a motion for summary judgment arguing that it was entitled to immunity pursuant to R.C. Chapter 2744. The trial court granted appellee's motion for summary judgment on April 22, 1999. On appeal, this court remanded the case finding that the trial court improperly relied on the amended version of R.C. Chapter 2744 found unconstitutional in State ex rel. Ohio Academy of Trial Lawyers v.Sheward (1999), 86 Ohio St.3d 451. See Beck v. Adam Wholesalers ofToledo, Inc. (June 2, 2000), Sandusky App. No. S-99-018, unreported. We did, however, consider and find not well-taken appellant's eighth assignment of error which argued that R.C. Chapter 2744 was unconstitutional.
On remand, on June 27, 2000, appellee filed its motion for summary judgment again arguing that it was immune from liability pursuant to R.C. Chapter 2744. The trial court again granted appellee's motion for summary judgment based upon R.C. Chapter 2744 immunity, and this appeal followed.
At the outset we note that when reviewing a motion for summary judgment, this court must apply the same standard as the trial court.Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Civ.R. 56(C) provides that summary judgment can be granted only if (1) no genuine issue of material fact remains to be litigated, (2) viewing the evidence in a light most favorable to the nonmoving party, reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party, and (3) the moving party is entitled to summary judgment as a matter of law. Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, paragraph three of the syllabus. The party moving for summary judgment has the burden of showing that there is no genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. If the moving party satisfies this burden, the nonmoving party has a reciprocal burden, as outlined in Civ.R. 56(E), to set forth specific facts demonstrating a genuine issue exists for trial. Id.
In determining whether appellee is entitled to sovereign immunity pursuant to R.C. Chapter 2744, we must answer four questions. We must first determine (1) whether or not appellee is a political subdivision, (2) whether appellee was engaged in a governmental or proprietary function, (3) if any of the exceptions to the general grant of immunity under R.C. 2744.02(B) apply, and (4) whether appellee is entitled to a defense or qualified immunity under R.C. 2744.03(A).
Appellant, in her assignments of error, argues that appellee is not immune from liability based upon the nuisance exception, R.C.2744.02(B)(3). Appellant also argues that, under R.C. 2744.02(B)(4), the death or injury need not have occurred on school property and, further, that there were physical defects on the property. Further, appellant contends that appellee is not entitled to the exercise of discretion defense under R.C. 2744.03(A)(5) in that appellee was reckless. Finally, appellant claims that R.C. Chapter 2744, in toto, is unconstitutional. We shall address each assignment of error in order.
In her first assignment of error, appellant argues that the trial court erred when it rejected her argument that the condition of the playground at York Elementary School created a nuisance. Specifically, appellant contends that appellee improperly maintained the yellow line and failed to install fencing and activate the "school zone" flashing lights.
R.C. 2744.02(A)(1) creates a general grant of immunity to governmental entities. It provides:
 "* * *. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."
It is undisputed that a school district is a political subdivision. R.C. 2744.01(F); Hall v. Bd. of Edn. (1972), 32 Ohio App.2d 297. Further, the parties do not dispute that appellee was engaged in a governmental function. Thus, pursuant to R.C. Chapter 2744, appellee is entitled to immunity from civil liability. We must now address whether the nuisance exception to immunity is applicable.
R.C. 2744.02(B)(3) requires that a political subdivision "keep [its] public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance, * * *." Such failure may result in civil liability.
In support of her argument that the nuisance exception applies under the facts of this case, appellant cites Franks v. Lopez (1994),69 Ohio St.3d 345; Cater v. Cleveland (1998), 83 Ohio St.3d 24; andSiebenaler v. Montpelier (1996), 113 Ohio App.3d 120.
In Franks, the Ohio Supreme Court found that a question of fact remained regarding whether the township created a nuisance by failing to maintain an existing sign's ability to reflect. The court, however, rejected the argument that defective design or construction or lack of signage constitutes a nuisance. Id. at 349-350.
Cater and Siebenaler involve injuries associated with municipality-owned swimming pools. In Cater, the Ohio Supreme Court held that the trial court erred in directing a verdict in favor of the city, where the trier of fact should have determined whether the glare from the reflection off the glass panels which obstructed visibility into the pool "created an unreasonable risk of harm[.]" Cater at 31. In Siebenaler, this court examined whether the alleged slippery condition on a diving board ladder amounted to a failure to keep the grounds in repair and free from nuisance under R.C. 2744.02(B)(3). We ultimately found that appellants failed to demonstrate that the ladder was poorly maintained or a nuisance. Siebenaler at 124.
Upon review of the above cases and the body of case law interpreting R.C. 2744.03(B)(3), we are reluctant to stretch the nuisance exception to include the absence of a fence or flashers involved in this case. The cases we have reviewed finding issues of fact as to nuisance address conditions existing on the property, not the lack of a condition. UnlikeFranks, we can find no legal duty requiring appellee to erect a fence or activate the flashers.[1] Franks stands for the proposition that once the fence or flashers had been erected or activated, appellee would be charged with the responsibility of proper maintenance.
In Cater, the court found the glare emanating from the wall of glass panels was an obstruction to visibility. In this case, appellant argues that the faded yellow line may not have been visible to Christian and may have been a cause of the accident.
Actual or constructive notice is a prerequisite under R.C. 2744.02(B)(3).Harp v. City of Cleveland Heights (2000), 87 Ohio St.3d 506, 513. There is evidence that appellee had, at minimum, constructive notice of the faded condition of the yellow line. Beverly DeBlase, principal at York School, testified that the yellow line was the partial southern playground boundary and, when asked if the line was faded stated "probably, yes." Rebecca
Cotterill, one of the playground supervisors on the date of the accident, stated that she did not know how bright or faded the line was but that it had been there for years.
Based on the foregoing, as a matter of law we find that civil liability may be imposed under R.C. 2744.02(B)(3). Accordingly, appellant's first assignment of error is well-taken.
In appellant's second assignment of error, she argues that the trial court erroneously interpreted R.C. 2744.02(B)(4) as requiring that the injury, death or loss complained of must have occurred on school grounds. The statute reads:
 "[P]olitical subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, * * *."
In its September 27, 2000 judgment entry, the trial court engaged in a lengthy discussion regarding the statutory construction of the above statute. The court reviewed the grammatical construction as well as legislative intent and concluded that the injury, death or loss had to occur on school property. The court then concluded that because Christian was struck while in the roadway, the exception did not apply. Under the specific facts of this case, particularly focusing on the continuous chain of events which culminated in the accident, we reject such a narrow interpretation of the statute. We agree with appellant that the foreseeability and proximity aspects in this particular case cannot be ignored. Denying review under R.C. 2744.02(B)(4) based upon a matter of inches leads to an absurd result.
We must now address whether, as a matter of law, potential liability exists under R.C. 2744.02(B)(4). Appellee correctly asserts that this court, in Tijerina v. Bd. of Edn. of Fremont (Sept. 30, 1998), Sandusky App. No. S-98-010, unreported, adopted the principle that "R.C.2744.02(B)(4) applies only to negligence which occurs in connection with the maintenance of school property." In Tijerina, a junior high school student with a known heart condition died of a heart arrhythmia after attending gym class. We found that the exception to immunity provided in R.C. 2744.02(B)(4) was not available because appellant alleged only the negligence of the school officials, not a physical defect in the school building or grounds or improper maintenance relative thereto.[2]
In the instant case, we find that no genuine issue of fact exists as to any actual physical defects on school grounds. Appellant has set forth no evidence that the absence of flashers during recess or a fence around the playground constitutes a "physical defect" as contemplated by the statute. Further, there is no evidence that a fence or flashers were required by law.
With regard to the actual maintenance of the property, appellant contends that the yellow line, or the "border" which the children were not permitted to cross, was faded and thus improperly maintained. As set forth in our analysis of appellant's first assignment of error, appellee admitted that the yellow line was faded.
Based on the foregoing, we find as a matter of law that civil liability under R.C. 2744.02(B)(4) may be imposed. Appellant's second assignment of error is well-taken.
Appellant's third and fourth assignments of error relate directly to the availability of the defenses and immunities under R.C. 2744.03(A). In her third assignment of error, appellant contends that the maintenance of the line was not a discretionary act and, thus, appellee is not entitled to immunity under R.C. 2744.03(A). In her fourth assignment of error, appellant, arguing alternatively, asserts that even assuming that the maintenance of the line was discretionary, issues of material fact exist as to whether appellant acted recklessly.
R.C. 2744.03(A) provides a mechanism by which a defendant may "regain" its immunity status when the activity at issue falls within one of the exceptions under R.C. 2744.02(B). Relevant to the instant case, R.C.2744.03(A) provides:
 "(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
"* * *
 "(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
"* * *
 "(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."
In interpreting the above provisions, the Supreme Court of Ohio has held that the nonliability provisions under R.C. 2744.03 must be read more narrowly than the exceptions to immunity under R.C. 2744.02(B), "or the structure of R.C. Chapter 2744 makes no sense at all." Greene Cty.Agricultural Soc. v. Liming (2000), 89 Ohio St.3d 551, 561.
As to appellee's potential liability under R.C. 2744.02(B)(3), the Fifth Appellate District has held that where an alleged negligent act of a political subdivision constitutes a nuisance, the "discretionary" defenses under R.C. 2744.03(A)(3) and (5) do not apply. Jones v. ShellyCo. (1995), 106 Ohio App.3d 440, 445, citing Scheck v. Licking Cty.Comm'rs. (July 18, 1991), Licking App. No. CA-3573, unreported.
The Supreme Court of Ohio has also suggested that the maintenance of a nuisance does not involve the type of discretion contemplated in R.C.2744.03(A)(3) and (5). Franks v. Lopez, 69 Ohio St.3d at 349. Specifically, the Franks court, addressing a township's failure to maintain existing signage, stated:
 "Overhanging branches and foliage which obscure traffic signs, malfunctioning traffic signals, signs which have lost their capacity to reflect, or even physical impediments such as potholes, are easily discoverable, and the elimination of such hazards involves no discretion, policy-making or engineering judgment. The political subdivision has the responsibility to abate them and it will not be immune from liability for its failure to do so." Id.
See, also, Cater v. Cleveland, 83 Ohio St.3d 24, 30-31, where the court found that R.C. 2744.02(B)(3) was applicable and that it was for the trier of fact to determine whether the city created an unreasonable risk of harm.
Regarding the liability provision under R.C. 2744.02(B)(4), the Supreme Court of Ohio, in Perkins v. Norwood City Schools (1999),85 Ohio St.3d 191, found that:
 "the decision of whom to employ to repair a leaking drinking fountain is not the type of decision involving the exercise of judgment or discretion contemplated in R.C. 2744.03(A)(5). Such a decision, under the facts of this case, is a routine maintenance decision requiring little judgment or discretion." Id. at 193
In Hall v. Ft. Frye Loc. School Dist. Bd. of Edn. (1996),111 Ohio App.3d 690, the appellant was injured when he stepped on an exposed sprinkler head during football practice on his high school practice field. Id. at 693. Finding that the R.C. 2744.03(B)(5) defense to liability was not available, the court distinguished the board's decision to purchase and install the sprinkler system from maintenance of the system. Id. at 699-700. The court noted that the installation of the sprinkler system was a discretionary act which was immunized from liability. Id. at 700. As to maintenance, however, the court stated:
 "[T]he maintenance of the school's irrigation system by appellee's employees is a totally separate matter that does not involve the exercise of such judgment or discretion. The decision to allocate resources, i.e., `how to use, equipment * * * or facilities,' has been made and is immunized. However, once that policy is put into effect, appellee's maintenance procedures must be performed in a reasonably safe manner. If the evidence establishes that appellee negligently maintained the irrigation system through arbitrary and random attempts to cover the sprinkler heads, liability may be imposed pursuant to R.C. 2744.02(B)(4)." Id.
Appellee, in response to appellant's arguments relative to R.C.2744.03(B)(5), cites this court's decision captioned _Banchich v. PortClinton Pub. School Dist. (1989), 64 Ohio App.3d 376. In Banchich, we determined that R.C. 2744.03(A)(5) was available as a defense to the manner in which a teacher instructed and supervised his students and his maintenance and inspection of a power jointer used in carpentry class.Id. at 378.
Upon review, we agree with appellant that the more recent pronouncement of law in Perkins, supra, is applicable in this case. The decision to place the yellow line on the playground for the purpose of using it as a portion of the southern boundary falls within the defenses to liability as a "discretionary" act. However, once the line was in place and the children were instructed to stay north of the line, the maintenance of the line cannot be considered a discretionary act. Accordingly, the defenses and immunities set forth in R.C. 2744.03(A)(3) and (5) are not applicable in this case and appellee may be exposed to civil liability under R.C. 2744.02(B)(3) and (4).
Accordingly, appellant's third assignment of error is well-taken. Based upon our disposition of appellant's third assignment of error, we find appellant's fourth assignment of error moot.
In appellant's fifth and final assignment of error she claims that the trial court erred when it failed to find R.C. Chapter 2744 unconstitutional. This claim was rejected in appellant's prior appeal in this matter and we find that it is barred by the doctrine of resjudicata. See Beck v. Adam Wholesalers of Toledo, Inc. (June 2, 2000), Sandusky App. No. S-99-018, unreported. Appellant's fifth assignment of error is not well-taken.
On consideration whereof, we find that substantial justice has not been done the party complaining, and the judgment of the Sandusky County Court of Common Pleas is reversed and the case is remanded for further proceedings consistent with this decision. Court costs of this appeal are assessed to appellee.
Richard W. Knepper, J., Mark L. Pietrykowski, P.J. CONCUR.
[1] In fact, R.C. 4511.21(B)(1)(a) provides, in part:
 "Nothing in this section or in the manual and specifications for a uniform system of traffic control devices shall be construed to require school zones to be indicated by signs equipped with flashing or other lights, or giving other special notice of the hours in which the school zone speed limit is in effect."
[2] Acknowledging a split among the districts, the Supreme Court of Ohio, in Hubbard v. Canton City School Bd. of Edn. (1999),84 Ohio St.3d 1486, accepted the Fifth Appellate District's proposed issue for certification in its December 7, 1998 judgment entry which set forth: "`Is the exception to the political subdivision immunity found in R.C. 2744.02(B)(4), effective 7/1/89, applicable only to negligence occurring in connection with the maintenance of school property or equipment, or to physical defects within or on the grounds of school property?'" The action, however, was subsequently dismissed as being improvidently allowed. See Hubbard v. Canton City School Bd. of Edn. (2000), 88 Ohio St.3d 14.
Noteworthy though not the current law, H.B. 350 amended R.C.2744.02(B)(4)to read: "* * * political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function * * *." (Emphasis added.)